IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AOZORA NEW ZEALAND LTD., <br><br> Plaintiff, <br><br> v. <br><br> FRU-VEG MARKETING, INC., <br><br> Defendant. | CIVIL ACTION <br> NO. 17-02594 |

## OPINION

**Slomsky, J.**                                                                                                    **March 29, 2018**

**I.    INTRODUCTION**

Plaintiff Aozora New Zealand LTD. brings this action against Defendant Fru-Veg Marketing, Inc., alleging a breach of contract and violations of the Perishable Agricultural Commodities Act (PACA)[1] all arising from a dispute regarding a consignment agreement

---

[1] 7 U.S.C. § 499(b) is the pertinent section of PACA and provides as follows:

> It shall be unlawful in or in connection with any transaction in interstate or foreign commerce . . . [f]or any commission merchant, dealer, or broker to make, for a fraudulent purpose, any false or misleading statement in connection with any transaction involving any perishable agricultural commodity which is received in interstate or foreign commerce by such commission merchant, or bought or sold, or contracted to be bought, sold, or consigned, in such commerce by such dealer, or the purchase or sale of which in such commerce is negotiated by such broker; or to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had . . . .

7 C.F.R. § 46.29(a) is also pertinent in this case:

> A commission merchant is not authorized to sell consigned produce outside the market area where he is located without obtaining the permission of the consignor. Averaging or pooling of sales is not permissible unless the receiver obtains the specific written permission of the consignor prior to the rendering of the accounting. . . .

1

between the parties. (Doc. No. 7.) Plaintiff is a New Zealand corporation with "its only place of business located at 18 Morgan Street, Newmarket, Auckland 1023, New Zealand." (Id. at 2 ¶ 4.) Defendant is a corporation with "its main business address located at 2300 NW 102nd Avenue, Miami, Florida." (Id. ¶ 5; see Doc. No. 9, Ex. B at 2 ¶ 2.) The parties entered into the consignment contracts in 2014 and 2016, under which Plaintiff's fresh New Zealand apples were consigned to Defendant at the Port of Philadelphia, Pennsylvania for sale in the surrounding market area. (Doc. No. 7.) A dispute arose and this action followed. (Id.)

Defendant has filed a Motion to Dismiss the Amended Complaint, asserting that this Court does not have personal jurisdiction over it and therefore this case should be dismissed or alternatively either stayed or transferred. (Doc. No. 9.) Plaintiff argues that jurisdiction arose from Defendant's targeting of Pennsylvania to ship and store its merchandise in this forum and then make its sales there, giving this Court specific jurisdiction over Defendant. (Doc. Nos. 7, 10.)

On June 9, 2017, Plaintiff filed the Complaint (Doc. No. 1), and on July 28, 2017, Plaintiff filed the Amended Complaint (Doc. No. 7). On August 11, 2017, Defendant filed the Motion to Dismiss the Amended Complaint for Lack of Jurisdiction. (Doc. No. 9.) On August 25, 2017, Plaintiff filed a Response in Opposition. (Doc. No. 10.)

In moving to dismiss and in the alternative either to stay or transfer this action to federal district court in Florida, Defendant relies on evidence such as a declaration of Defendant's Chief Executive Officer (CEO), Conchita Espinosa, submitted under penalty of perjury; an attorney declaration submitted under penalty of perjury; e-mail communications dating from 2016 between Conchita Espinosa and Plaintiff's Managing Director, Anthony Bruford, regarding terms

of one of the parties' consignment contracts; and a Complaint in a concurrent action in state court in Florida, which it contends is based on the same claims as asserted in this action and was filed over a month before it.[2] (Doc. No. 9.) This evidence is offered to show that Defendant has sparse contact with Pennsylvania and that the dispute in this case concerns a contract that was formed outside the forum and has contractual terms that were meant to be executed also outside the forum. (See id.) For these reasons, Defendant contends that any contact with Pennsylvania is unrelated to Plaintiff's claims. (See id.) Further, the evidence is offered to show that Florida is a more appropriate forum and that since the same claims were filed first in Florida state court, a stay of this action or transfer to federal court in Florida would be more appropriate than litigating the action in Pennsylvania. (See id.)

In its Response, Plaintiff offered evidence to show that this case should be litigated in Pennsylvania. (See Doc. No. 10.) The evidence includes a declaration of Anthony Bruford and attorney declarations, all submitted under penalty of perjury, which Plaintiff contends refute Defendant's characterization of the claims in this case; and e-mail communications from 2013 and 2016 between Anthony Bruford and Conchita Espinosa and between Bruford and Defendant's Director of Procurement and other documents relating to sales of the apple shipments at issue. (Id.) Plaintiff's evidence is offered to show that the claims in this case concern Defendant's activities in this forum because the claims are based on Defendant's sales of the apples, which Defendant chose to have shipped and stored in Pennsylvania and then sold in the surrounding market area. (See id.)

---

[2] The action in Florida state court, brought by Defendant in the instant case against the Plaintiff, concerns a contractual dispute between the parties regarding whether they agreed to consignment of apples with the label "All Grade" or "Extra Fancy Grade" in the 2016 consignment contract. (Doc. No. 9-2 at 5-7.) This claim appears to be different from the allegations in the Amended Complaint filed before this Court.

3

A hearing on the Motion to Dismiss for lack of jurisdiction was held on October 4, 2017. (Doc. No. 13.) At the hearing, the Court granted the parties a period of time to engage in jurisdictional discovery and the opportunity to file supplemental briefs on the issue of the jurisdiction of this Court. (Id.) During jurisdictional discovery, Plaintiff obtained data from an association that tracks fruit and vegetable exports from Chile, including all such shipments into the United States. (Doc. No. 14.) Specifically, Plaintiff obtained data for the years of 2014 through 2016 regarding all of Defendant's shipments from Chile into the Port of Philadelphia, Pennsylvania. (Id.) Plaintiff offered this evidence as support for its position that Defendant imported Plaintiff's fruit into Pennsylvania not as an isolated contact with the forum, but as part of a large marketing enterprise that includes substantial shipments into the Philadelphia port. (See id.)

On November 20, 2017, Plaintiff filed a supplemental brief in further opposition of the Motion to Dismiss. (Id.) On December 4, 2017, Defendant filed a supplemental brief in support of its Motion. (Doc. No. 15.) On December 11, 2017, Plaintiff filed a supplemental reply brief. (Doc. No. 16.)

Defendant's Motion to Dismiss the Amended Complaint for Lack of Jurisdiction (Doc. No. 9) is ripe for disposition.[3]

---

[3] In reaching a decision, the Court has considered the Amended Complaint (Doc. No. 7), the Motion to Dismiss the Amended Complaint (Doc. No. 9), Plaintiff's Response in Opposition (Doc. No. 10), Defendant's Reply (Doc. No. 68), the arguments of counsel at the hearing on the Motion to Dismiss held before the Court on October 4, 2017 (Doc. No. 13), Plaintiff's supplemental brief in further opposition to the Motion to Dismiss (Doc. No. 14), Defendant's supplemental brief in support of its Motion to Dismiss (Doc. No. 15), and Plaintiff's supplemental reply brief (Doc. No. 16).

## II. STANDARD OF REVIEW

A plaintiff bears the burden of establishing with reasonable particularity that personal jurisdiction exists when the defendant has made a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). When, as here, a court does not hold an evidentiary hearing on the motion to dismiss, "the plaintiff need only establish a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

When defending against a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff must do more than rely on the pleadings alone. Once a motion has been made, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Id. at 102 n.6 (quoting Patterson v. FBI, 893 F.3d 595, 603-04 (3d Cir. 1990)). Instead of relying on "mere allegations" to assert personal jurisdiction, the plaintiff must respond to Rule 12(b)(2) motions with "actual proofs." Id.

Under Federal Rule of Civil Procedure 4(e), a federal court may exercise personal jurisdiction "over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Pennsylvania, where this Court sits, has a statute that provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States" and "based on the most minimum contact with [the] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b).

The Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have "certain minimum contacts within the [forum state]" so that defending the suit "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v.

5

Washington, 326 U.S. 310, 316 (1945). This principle is based on the notion that a defendant has "fair warning" that it may be subject to a suit in a state where it has a certain level of minimum contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

In this regard, courts have articulated two types of personal jurisdiction: general jurisdiction and specific jurisdiction. See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). General jurisdiction exists when a foreign corporation's affiliations with the forum are "so continuous and systematic as to render them essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014). When, as here, "no party . . . contends that there is a basis for general jurisdiction in Pennsylvania . . . [courts] are free to consider solely whether the alternative form of personal jurisdiction is present: specific personal jurisdiction." Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200-01 (3d Cir. 1998). Specific jurisdiction, which essentially deals with the actions of a party targeting its conduct at a specific jurisdiction, is described more fully below.

## III. ANALYSIS

### A. Defendant Is Subject to the Specific Jurisdiction of This Court

To determine whether specific jurisdiction exists, a court must engage in a three-part inquiry:

> First, the defendant must have "purposefully directed [its] activities at the forum." Second, litigation must "arise out of or relate to" at least one of those activities. And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 103 (3d Cir. 2009) (first quoting Burger King Corp., 471 U.S. at 476; then quoting Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414; and then again quoting Burger King Corp., 471 U.S. at 476).

6

The facts adduced by Plaintiff to establish that this Court has specific jurisdiction over Defendant are as follows. From March to June 2014, in response to Defendant's solicitations and pursuant to agreements between the parties, Plaintiff consigned and shipped eleven containers of fresh New Zealand apples to Defendant at the Port of Philadelphia, Pennsylvania. (Id. ¶ 6; Doc. No. 10, Ex. C at 17.) In April and May 2016, again in response to Defendant's solicitations and pursuant to agreements between the parties, Plaintiff consigned and shipped three containers of fresh New Zealand apples to Defendant at the Philadelphia port. (Doc. No. 7 at 4 ¶ 10; id. at 4 ¶¶ 11-14; Doc. No. 10, Ex. C at 17.)

The consignment contracts between the parties provided in part for Defendant to sell the apples in the market area where they were delivered. (Doc. No. 14-1 at 1-2 ¶ 2.) After Defendant sold the apples, it would deduct allowable expenses together with a sales commission on the gross sales, and remit the balance, less any amounts paid in advance, to Plaintiff along with a detailed account of sale for each container lot in accordance with the requirements of the Perishable Agricultural Commodities Act (PACA). (Doc. No. 7 at 3 ¶ 7.) Each container carried the additional requirement of a Minimum Guaranteed Price (MGP) of $31.50 c.i.f. (cost, insurance, freight) Philadelphia to be applied and paid on a container-by-container basis if Defendant's net sale proceeds on a given container fell below the agreed MGP. (Id.) Defendant made advance payments on each container lot amounting to 70% of the MGP based on the number of cartons in each container. (Id.)

Defendant received and accepted all eleven containers in the 2014 shipments, which contained an MGP of $31.50 c.i.f. Port of Philadelphia, and all three containers in the 2016 shipments, which contained a total of 3,514 apples and an MGP of $35.50 c.i.f. Port of Philadelphia. (Id. at 3 ¶ 8; id. at 4 ¶ 11; id. at 6 ¶ 24.) After delivery and acceptance of the 2014

7

and 2016 shipments, Defendant sold the apples to undisclosed purchasers out of cold storage facilities used to receive and store them in the eastern Pennsylvania area. (Id. at 5 ¶ 20.) Defendant remitted the net sale proceeds to Plaintiff for the 2014 shipments. (Doc. No. 7 at 3 ¶ 8.) However, it did not remit the amount due under the MGP after it sold the 2016 shipments. (Id. at 4 ¶¶ 11, 13-14.)

An applicable PACA regulation requires the consignor's permission to sell consigned produce outside the consignee's market area. 7 C.F.R. § 46.29(a). The consignor here is Plaintiff, whose Managing Director, Anthony Bruford, stated in his declaration submitted under penalty of perjury that Defendant improperly sold apples to "firms in 'Massachusetts, Illinois, and Georgia' [but it] never asked or received authority to sell [Plaintiff's produce] so far outside of the Philadelphia/New York [City] marketing area where the apples were delivered and generally should have brought higher prices." (Doc. No. 10-1 at 5 ¶ 9.) He does not allege, nor is there evidence in the record to show, that sales were made in Pennsylvania; and Conchita Espinosa declares that no sales were made in Pennsylvania: "We sold the apples to customers in New Jersey, New York, Massachusetts, Illinois, and Georgia." (Doc. No. 9, Ex. B at 3 ¶ 5.)

Plaintiff alleges breach of contract and violations of PACA regarding the consignment contracts for the 2014 and 2016 shipments. (Doc. No. 7 at 4-6.) Specifically, Plaintiff alleges that Defendant's accounting and payments were not made in conformity with PACA regulations; Defendant engaged in improper pooling of containers and improper averaging of its sales prices; Defendant sold apples outside the intended and disclosed market area; and has refused to pay all sums due under the shipments. (Id. at 5 ¶ 22; id. at 6 ¶ 26.)

Following jurisdictional discovery, Plaintiff uncovered other contacts with the forum by Defendant. (Doc. No. 14.) These contacts are that Defendant imported more than 66,000 cases

8

of Chilean produce into Philadelphia during the 2014 to 2015 season, and more than 150,000 cases during the 2016 to 2017 season. (Doc. No. 14-1 at 1-2 ¶ 2.)

### 1. Plaintiff has established that Defendant purposefully directed activities at Pennsylvania.

To satisfy the first prong of this inquiry, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 325, 353 (1958). While the defendant need not have entered the forum state, a deliberate targeting of the forum is necessary. Id. Further, jurisdiction must be the result of intentional contact, not mere "random, fortuitous, or attenuated" acts. BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000).

In this case, Plaintiff has produced evidence sufficient to show that Defendant "purposefully avail[ed] itself of the privilege of conducting activities" in Pennsylvania. Hanson, 357 U.S. at 353. That Defendant contracted to have the shipments of apples sent into Philadelphia, and then inspected and stored them there and subsequently sold them in the surrounding market area, all of which show a deliberate targeting of this forum. (Doc. No. 10-4 at 7; id. at 8.) Defendant also imported more than 66,000 cases of Chilean produce into Philadelphia during the 2014 to 2015 season, and more than 150,000 cases during the 2016 to 2017 season. (Doc. No. 14-1 at 1-2 ¶ 2.) This activity constitutes further evidence of such targeting. Moreover, it is evident that Defendant chose this forum for the purpose of deriving a monetary benefit, given the high-priced market area surrounding this forum; and high sales prices are more likely to lead to higher commissions for Defendant. All these contacts demonstrate that Defendant purposefully availed itself of the privilege of conducting activities in this forum. Thus, Plaintiff has satisfied the first element of the specific jurisdiction inquiry.

## 2. Plaintiff has established that the instant litigation arises out of or relates to at least one of those activities

The second prong of the Third Circuit's specific jurisdiction test zeroes in on whether the litigation "arise[s] from or relate[s] to" the activities discussed in the first prong. Int'l Shoe, 326 U.S. at 319. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., 137 S. Ct. 1773, 1180 (alteration in original) (quoting Goodyear v. Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" Id. (quoting Goodyear, 564 U.S. at 919). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Id. As the Supreme Court explained in Goodyear, "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." Goodyear, 564 U.S. at 930 n.6.

In this case, Plaintiff has made a prima facie showing that this litigation arises out of or relates to at least one of Defendant's contacts with Pennsylvania. Plaintiff alleges here that its claims arise out of Defendant's purposeful transaction of business in this district. Although Defendant contends that these claims do not arise out of or relate to any activities of Defendant in Pennsylvania, but instead relate to accountings and sales that took place outside Pennsylvania and which were sent to Plaintiff in New Zealand (Doc. No. 15 at 3), as noted earlier this argument is not persuasive.

Plaintiff's claims are that Defendant's accounting and payments were not made in conformity with PACA regulations; Defendant engaged in improper pooling of containers and

10

improper averaging of its sales prices; it sold apples outside the intended and disclosed market area; and it failed and has refused to pay all sums due under the shipments. (Doc. No. 7 at 5 ¶ 22; id. at 6 ¶ 26.)

These claims arise out of sales from the apple shipments. Though it is unclear where the apples were sold because Defendant's sales records showing this information were not disclosed during jurisdictional discovery, the shipments were destined for this forum at Defendant's direction. Defendant, as the consignee, opted for this forum as well as New Jersey and New York as the market area for its shipments, and communicated this request to Plaintiff, the consignor, thereby constraining its sales to this forum and the surrounding market area pursuant to 7 C.F.R. § 46.29(a).[4] Defendant's neglect to limit its sales to this market area also is a basis for Plaintiff's claims. Further, the apple shipments were stored in Philadelphia and subsequently sold from this geographic area. Thus, this forum is the location where the litigation claims arise out of or relate to market activities that led to the claims. Accordingly, the second element required to establish specific jurisdiction is met.

### 3. The exercise of jurisdiction over Defendant comports with fair play and substantial justice

After determining whether the defendant has the requisite minimum contacts, a court may nevertheless decline to exercise jurisdiction if doing so fails to comport with fair play and substantial justice. In this regard, in World-Wide Volkswagen v. Woodson, 444 U.S. 286 (1980), the court noted "fairness factors" that a court should consider. Id. "These factors include: 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate judicial system's interest

---

[4] As noted, 7 C.F.R. § 46.29(a) provides in part as follows: "A commission merchant is not authorized to sell consigned produce outside the market area where he is located without obtaining the permission of the consignor...."

11

in obtaining the most efficient resolution of controversies . . . .'" Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1222 (3d Cir. 1992) (citation omitted).

Here, regarding the first factor, the burden on Defendant is low given advances in modern communication and transportation. Moreover, Defendant has contacts here, given that it chose to do business through the Port of Philadelphia and the surrounding area. Even though it is principally located in Miami, Florida, it can still defend the case in the Eastern District of Pennsylvania. Regarding the second factor, Pennsylvania's interest is high because the claims are for breaches of contract and PACA regulations based on activities that have strong ties to Pennsylvania.

Regarding the third factor, which involves Plaintiff's interest in obtaining convenient and effective relief, this forum is less convenient for Plaintiff than it is for Defendant, given that Plaintiff is a corporation located in New Zealand. But Plaintiff chose to litigate here because it claims that the "overriding concern" is that the nonparty inspectors and purchasers are located in the Pennsylvania and Tri-State marketing area "who may be necessary witnesses, most of whom are either in this District or may be subject to subpoena and deposition in this District." (Doc. No. 14-3 at 7.) In addition, this forum can provide Plaintiff effective relief if warranted. For these same reasons, the final factor, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, weighs in Plaintiff's favor. Therefore, for all these reasons, this Court's exercise of jurisdiction over Defendant comports with fair play and substantial justice.

## B. This Action Will Not Be Stayed

Defendant requests that this Court stay this matter pending the resolution of the Florida case, which was filed slightly over a year before this action was filed. (Doc. No. 9-2 at 4.) Defendant points to two Ninth Circuit decisions and a decision from the United States District Court for the District of Arizona to support the policy-based argument that a stay of this action would enhance efficiency as well as avoid waste of resources and potentially conflicting rulings. (Doc. No. 9-1 at 11-12.)

The Court is not persuaded to issue a stay based on the cases relied on by Defendant because they do not involve the situation that is present here—a suit pending in federal district court and allegedly concurrent litigation in state court. The decisions cited by Defendant and their underlying claims follow. See Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857 (9th Cir. 1979) (stay pending arbitration under collective bargaining agreement); Acura of Bellevue v. Reich, 90 F.3d 1403 (9th Cir. 1996) (finding that automobile dealers' action against Secretary of Labor and other personnel of Department of Labor challenging Department administrator's finding that dealers violated child labor laws was not ripe for judicial review); Ctr. for Bio. Diversity v. U.S. Dep't of Labor, 255 F. Supp. 2d 1030 (D. Ariz. 2003) (stay pending final decision by Interior Board of Land Appeals). These cases are markedly different from the posture of the situation here.

The Court also is not persuaded that any argument based on the "first-filed rule" is applicable here because unlike the situation presented in this case, where lawsuits involving the same parties were filed in state and federal court, the "first-filed rule" applies when duplicative lawsuits are filed successively in federal district courts. Chavez v. Dole Food Co., 836 F.3d 205, 210 (3d Cir. 2016). Furthermore, there is no stipulated agreement between the parties that the lawsuits are duplicative.

In any event, the question whether to stay a federal suit out of deference to parallel litigation brought in state court was addressed by the Supreme Court in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). There, the Supreme Court described factors to be weighed when considering the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction:

> It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts. . . . In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. <u>Only the clearest of justifications will warrant dismissal</u>.

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15-16 (1983) (emphasis added) (quoting Colo. River Water Conservation Dist., 424 U.S. at 818-19).

Under this test, which is referred to as the "exceptional circumstances" test, the "decision whether to dismiss a federal action because of a parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983).

The Supreme Court in Moses H. Cone Memorial Hospital applied this test when reviewing of a federal district court's decision to stay proceedings before it because of a concurrent state court action. Id. at 19. The Court found that there was no showing of the requisite exceptional circumstances to justify the stay and that several factors counseled against a stay. Id. at 19-20.

14

The Court in Moses H. Cone Memorial Hospital explained that in determining whether to stay a federal suit out of deference to parallel litigation brought in state court, the factor of the "exceptional circumstances" balancing test that considers "the order in which jurisdiction was obtained by the concurrent forums" should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions. Id. at 21. The Court also explained that in addition to the four factors discussed in Colorado River, there is another that emerges from the Supreme Court decision in Will v. Calvert Fire Insurance Co., 437 U.S. 655 (1978): "the fact that federal law provides the rule of decision on the merits." Moses H. Cone Mem'l Hosp., 460 U.S. at 23. The Court stated that the presence of federal issues must always be a major consideration weighing against surrender of federal jurisdiction out of deference to parallel litigation brought in state court. Id.

Applying these factors here, the first factor is not applicable because neither court assumed jurisdiction over property. Regarding the second factor, the inconvenience of the federal forum, this factor does not counsel in favor of a stay. The claims arose out of activities connected with this forum. Potential witnesses are more likely to reside in this forum, where the apples were stored and out of which they were sold. And, as noted previously, given Defendant's frequent contact with the forum through its marketing operation, to litigate in this forum does not appear to pose an inconvenience. Therefore, this factor does not support a stay.

Regarding the third factor, the desirability of avoiding piecemeal litigation, this factor does not counsel in favor of stay. The Florida action is based on claims for breach of contract due to Aozora, the Plaintiff in this action, delivering apples with the label "All Grade" when Defendant argues it contracted for "Extra Fancy Grade." (Doc. No. 9-2 at 5-7.) These claims

15

can be resolved without affecting this Court's resolution of Plaintiff's claims, which apparently are distinguishable.

Regarding the "priority" factor, while the Florida suit was filed slightly one month before this action was filed, there is no indication in the record that the case has progressed beyond this one. All that has been asserted regarding that action is that a default has been entered for Aozora's failure to answer the complaint against it. (Doc. No. 9-1 at 2.) Therefore, this factor counsels against granting a stay.

Finally, the Calvert factor regarding the presence of federal issues counsels against a stay because federal issues are present here, given Plaintiff's claims that Defendant committed violations of PACA, a federal statute. For all these reasons, the Court will not grant a stay.

### C. The Action Will Not Be Transferred to the United States District Court for the Southern District of Florida

Defendant has moved to transfer this matter to the United States District Court for the Southern District of Florida. It argues that convenience and fairness considerations favor transfer. (Doc. No. 9-1 at 12-13; Doc. No. 15 at 7.)

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented" as long as it is "[f]or the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Even in diversity cases, federal law governs the determination of whether to transfer venue under § 1404(a), since the issue is procedural rather than substantive. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).[5]

---

[5] "In deciding whether to transfer a case, a court must consider 'the private and public interests protected by the language of § 1404(a).'" AAMCO Transmissions, Inc. v. Romano, 42 F. Supp. 3d 700, 712 (E.D. Pa. 2014) (quoting Jumara, 55 F.3d at 879). Private interests include:

As discussed supra in the Court's jurisdictional analysis, the convenience of parties and witnesses and the interest of justice weigh in favor of retaining jurisdiction in this district. Therefore, the Court will not transfer this case to another district.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 9) will be denied. An appropriate Order follows.

---

> [P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Jumara, 55 F.3d at 879 (citations omitted). Public interests include:

> [T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (citations omitted). The moving party bears the burden of establishing the need for transfer, and "in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." Id. at 879.

Here, Defendant has not discussed the Jumara factors in its Motion and merely argues that "convenience and fairness considerations" weigh in favor of transfer to the United States District Court for the Southern District of Florida. (Doc. No. 9 at 12-13.) This Court has considered the Jumara factors in connection with this case, many of which have been discussed in the analysis above because they are raised in the matters under review, and concludes that they weigh in favor of venue remaining in this district.