# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AOZORA NEW ZEALAND LTD., <br><br> Plaintiff, <br><br> v. <br><br> FRU-VEG MARKETING, INC., <br><br> Defendant. | CIVIL ACTION <br> NO. 17-2594 |

**OPINION**

**Slomsky, J.**                                                                                                                            **November 27, 2019**

## I. INTRODUCTION

On June 9, 2017, Plaintiff Aozora New Zealand Limited ("Plaintiff") filed a Complaint (Doc. No. 1) against Fru-Veg Marketing Incorporated ("Defendant") claiming that Fru-Veg did not properly account and pay to Aozora monies due under consignment agreements for the shipment of apples in 2014 and 2016. Thereafter, on July 28, 2017, Plaintiff filed a First Amended Complaint ("FAC"). (Doc. No. 7.) In response, on August 11, 2017, Defendant filed a Motion to Dismiss the FAC for Lack of Jurisdiction. (Doc. No. 9.) The Defendant's Motion essentially asserted that Defendant was located in Florida, did not do business in Pennsylvania, and the Court did not have personal jurisdiction over the corporation. (Id.)

A hearing on the Motion was held on October 4, 2017, and the Court afforded the parties the opportunity to take jurisdictional discovery. The parties did so, and on March 29, 2018, the Court denied Defendant's Motion to Dismiss in an Opinion and Order finding that the Court had jurisdiction over Defendant. (Doc. Nos. 17-8.) On April 19, 2018, an Answer to the FAC was filed. (Doc. No. 19.)

Next, a conference was held with counsel pursuant to Rule 16 of the Federal Rules of Civil Procedure and, after the conference, a detailed Scheduling Order was issued. (Doc. No. 26.); see also Fed. R. Civ. P. 16. It was entered on the docket on August 27, 2018. (Doc. No. 26.) On January 4, 2019, an Amended Scheduling Order was issued. (Doc. No. 36.) Under this Order, fact discovery closed on March 4, 2019, motions for summary judgment had to be filed by May 29, 2019, and pre-trial memoranda by June 26, 2019. (Id.)

On May 29, 2019, Defendant filed a partial Motion for Summary Judgment (Doc. No. 40), which was responded to on June 19, 2019. (Doc. No. 41.) Pursuant to the Amended Scheduling Order, pre-trial memoranda were then filed by the parties. (Doc. Nos. 44-45.) A final pre-trial conference was scheduled for July 23, 2019 and trial scheduled for July 30, 2019. (Doc. No. 36.)

On June 28, 2019, less than one month before the final pre-trial conference and a month and two days before trial, Plaintiff filed a "Notice of Motion to Amend and Supplement Plaintiff's Complaint" and attached a Second Amended Complaint ("SAC"). (Doc. No. 46.) Defendant opposed the Motion. (Doc. No. 50.) The question currently before the Court is whether Plaintiff's Motion to Amend and Supplement Plaintiff's Complaint should be granted. For reasons that follow, the Motion will be denied.

## II. BACKGROUND

### A. First Amended Complaint

In the FAC, under the heading "Operative Facts Underlying All Claims," Plaintiff alleged that in 2014 it entered into a consignment agreement with Defendant. (Doc. No. 7 at 2-4.) Under this agreement, Plaintiff was to consign, ship, and deliver eleven (11) containers of fresh apples to the Port of Philadelphia, Pennsylvania, and Defendant was to sell them to undisclosed purchasers. (Id.) The terms of the consignment agreement were standard in accordance with United States

Department of Agriculture ("USDA") regulations set forth in 7 C.F.R. Part 46,[1] and provided, <u>inter alia</u>, that Defendant would sell the apples in the delivery market area, deduct allowable expenses together with a sales commission on the gross sales, and remit the balance less any amounts paid in advance to Plaintiff along with a detailed account of sale for each container. (<u>Id.</u>) Each of the eleven (11) containers would be sold at a Minimum Guaranteed Price (the "MGP") of $31.50 c.i.f. (cost, insurance, and freight) to be paid on a container-by-container basis if Defendant's net sale proceeds on a given container fell below the agreed upon MGP.[2] (<u>Id.</u>)

Plaintiff alleges that in 2014, Defendant received and accepted all eleven (11) containers, sold the contents and issued accountings covering the containers which met or exceeded the MGP, and remitted the net sales proceeds to Plaintiff. However, in Count I of the FAC Plaintiff argues, among other things, that Defendant failed "to pay all sums due for the 2014 shipments" because Defendant was "entitled to sales commissions of not more than 8%" on the shipments but instead took a 10% commission. (<u>Id.</u>); <u>see</u> <u>also</u> (Doc. No. 41-1.)

The FAC also describes a 2016 consignment agreement between Plaintiff and Defendant. The 2016 agreement carried the same terms as the 2014 agreement, with the exception that the consigned apples this time had an MGP of $35.50 c.i.f. (Doc. No. 7.) Plaintiff contends that

---

[1] 7 C.F.R. 46 contains the regulations (other than rules of practice) promulgated under the Perishable Agricultural Commodities Act ("PACA"). PACA protects businesses dealing in fresh and frozen fruits and vegetables. The primary purpose of PACA is to prevent unfair and fraudulent conduct in the marketing and selling of perishable agricultural commodities. 7 U.S.C. § 499.

[2] Minimum guaranteed prices ("MGP") are common in this kind of agricultural sale. A minimum price is set because agricultural products can spoil and lose their value if not sold promptly. Cost, insurance, and freight ("c.i.f.") is an expense paid by the seller to cover the potential loss or damage to a buyer's order while it is in transit by an exporter named in the sales contract. In this case, the port named in the contract where the apples were to be shipped was Philadelphia. (Doc. No. 7 at 3.)

Defendant accepted three (3) containers of apples, sold them and issued accountings as before, but did not remit the amount due under the MGP, even though the net sale proceeds failed to meet the minimum price that was guaranteed. (Id.)

Based on these facts, Plaintiff sought relief by alleging three claims in the FAC. In Count I, Plaintiff alleges a breach of contract and a violation of the Perishable Agricultural Commodities Act ("PACA") regarding the eleven (11) container shipments in 2014. (Id. at 4-5.) Although this Count alleges a violation of PACA as a potential claim, it is essentially a breach of contract claim for violating the consignment agreement issued under PACA and its regulations. Count I states that (1) Defendant's accountings and payments did not conform with PACA and its regulations; (2) Defendant's accountings revealed Defendant's improper pooling of containers and improper averaging of its sales price;[3] and (3) Defendant breached its statutory and contractual duties owed to Plaintiff in failing to pay all sums due for the 2014 shipments, which included the overcharge on the sales commission. For the violations alleged in Count I, Plaintiff requests "damages in the sum of at least $9,156.42 together with such other and further sums as accurate and full accountings for the 11 containers may disclose to be due Plaintiff [.]" (Id. at 5.)

In Count II, Plaintiff alleges damages arising from the 2016 consignment agreement in language somewhat different from the language alleged in Count I. Similar to Count I, Count II essentially alleges a breach of contract claim for violating the consignment agreement issued under PACA and its regulations. However, Plaintiff contends in this instance that Defendant failed "to

---

[3] 7 C.F.R. § 46.29(a) states the following:

> A commission merchant is not authorized to sell consigned produce outside the market area where he is located without obtaining the permission of the consignor. Averaging or pooling of sales is not permissible unless the receiver obtains the specific written permission of the consignor prior to the rendering of the accounting ....

render prompt and proper accountings to Plaintiff, and failed to make full payment in accordance with its statutory and contractual obligations owed to Plaintiff, sold Plaintiff's apples outside the intended and disclosed market area, and failed to issue prompt and proper accountings … all to Plaintiff's damage in the sum of $31,687.75 [.]" (Id. at 6.)  According to Plaintiff, there were only three shipments in 2016 which occurred on April 27th, May 4th, and May 11th. (Id.)  Plaintiff delivered a total of three thousand five hundred and fourteen (3,514) cartons of fresh New Zealand apples to Defendant at the Philadelphia port in three containers.  (Doc. No. 7.)  Plaintiff alleges that Defendant accepted the apples, moved them to its storage facility in the Philadelphia area, and subsequently sold the apples to its undisclosed customers.  (Id.)  For the violations alleged in Count II, Plaintiff requests damages "in the sum of $31,687.75 plus such other and further sums as an accurate accounting on the subject shipments may reveal." (Id. at 6.)

Lastly, in Count III of the FAC, Plaintiff sought attorney fees costs, and disbursements incurred by Plaintiff.  (Id. at 6-7.)  This Count incorporates the prior allegations in the FAC and also adds the following language:

> … Defendant was under a burden to conduct its handling of Plaintiffs commodities in accordance with U.S.D.A. Regulations and the provision of the Act which proscribe and define Unfair Conduct under PACA.
>
> Defendant has engaged in a pattern of Unfair Conduct in connection with its handling of Plaintiffs commodities, its accountings, and its payment practices.
>
> That as the direct result of Defendant's actions and violations of laws and its obligations to Plaintiff, Plaintiff has had to retain legal counsel, has incurred attorney's fees and costs, and such fees and costs will continue to increase, all to Plaintiff's damage in an amount as may be determined by the Court…

(Id. at ¶¶ 28-30.)

### B. The Second Amended Complaint and Declaration of Plaintiff's Counsel, Mark C. H. Mandell, Esquire

As noted, on June 28, 2019, Plaintiff sought leave to file a Second Amended Complaint ("SAC") by filing a "Notice of Motion to Supplement and Amend Complaint."[4] (Doc. No. 46.) Attached to the Notice was a Declaration of Mark C. H. Mandell, Esquire, counsel for Plaintiff (Doc. No. 46-1), explaining the reasons why the SAC was being filed, albeit at such a late date in the litigation.[5] His Declaration alleges the following:

a) Count I: Money damages [for 2014] have increased to conform with the evidence placed in the record during Defendant's deposition of Anthony Bruford[6] in February as the result of Plaintiff's efforts to audit Defendant's consignment records.

b) Count II: Money damages [for 2016] have increased to conform with the evidence placed in the record during Defendant's depositions of Anthony Bruford and Conchita Espinosa[7] in February, again as the result of Plaintiff's audit of Defendant's consignment transaction records.

c) Count III has been amended to merely specifically identify a statutory provision under which the Court may award Plaintiff attorney's fees based upon Defendant's actions.

d) Count IV asserts a claim for breach of fiduciary obligations arising out of Defendant's position, acts, and omissions in its handling of its obligations as Plaintiff's consignment agent for the sale of the 14 shipments of apples. Damages on Count IV are unquantified except for the established remedy of revocation, in whole or in part, of Defendant's

---

[4] Although Plaintiff styles the instant Motion as one to "Supplement" the Complaint pursuant to Fed. R. Civ. P. 15(d), the reasons provided for supplementation as noted in this Opinion are insufficient.

[5] As noted supra, the Motion for Leave to File the SAC was filed after jurisdictional discovery was undertaken and a ruling was made on the related Motion to Dismiss (Doc. No. 9), after the close of fact discovery on March 4, 2019, after the filing of a Motion for partial Summary Judgment (Doc. No. 40) on May 29, 2019, and after the filing of pre-trial memorandum on June 19, 2019 (Doc. No. 43-4.)

[6] Anthony Bruford is the Managing Director of Plaintiff Aozora New Zealand Limited.

[7] Conchita Espinosa is the President and Owner of Defendant Fru-Veg.

entitlement to receive commissions on its sales of Plaintiff's apples which involve $58,000 in deductions on Defendant's accountings.

(Doc. No. 46-1 at 2.)

> **C. Second Amended Complaint: Count I Alleges a Breach of Contract and Violation of PACA-2014 Season, and Count II Alleges a Breach of Contract and Violation of PACA-2016 Season.**

In Counts I and II of the SAC, Plaintiff sought to increase the amount of money damages caused by Defendant's alleged breaches of the contracts or consignment agreements. In counsel's Declaration, supra, he addresses Count I and Count II and attempts to justify the difference between the FAC and the SAC. (Id.) Counsel relies on the fact that money damages have increased based upon Defendant's depositions of Anthony Bruford ("Bruford") and Conchita Espinosa ("Espinosa"). (Id. at 2.) Regarding the 2014 shipments alleged in Count I, the money damages increased from a minimum of $9,156.42 in the FAC to a minimum of $34,055 in the SAC. (Doc. Nos. 7, 46-2.) Regarding the 2016 shipments alleged in Count II, the money damages increased from a minimum of $31,687.75 in the FAC to a minimum of $35,738 in the SAC. (Id.)

> **D. Second Amended Complaint: Count III Alleges a Violation of Florida Deceptive Trade Practices Act and Count IV Alleges a Breach of Fiduciary Obligations.**

In addition to the increase in damages in Counts I and II of the SAC, Plaintiff retitled Count III from "Attorney Fees" to "Violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")."[8] (Doc. No. 46-2.) According to the Declaration of Plaintiff's counsel, Count III

---

[8] Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Sections 501.201-.213, is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.201 (West); see also Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So. 2d 602 (Fla. Dist. Ct. App. 1997). Although the title of this statute uses the language "Deceptive and Unfair Practices," the statute really is aimed at eliminating fraudulent conduct in commercial transactions and, in this regard, essentially has the same intent as PACA, which covers commodities transactions.

has been amended to "merely specifically identify a statutory provision under which the Court may award Plaintiff attorney's fees based upon Defendant's actions."[9] (Doc. No. 46-1 at 2.) Count III states, however, in relevant part:

> … Defendant as a Florida corporation was under a burden to conduct its handling of Plaintiff's commodities in accordance with U.S.D.A. Regulations and the provisions of the Act as well as the laws of the State of Florida at West's F.S.A. §501.201-.213, which proscribe and define Unfair Conduct and/or deceptive conduct in commercial transactions.
>
> … Defendant made false and/or misleading statements to Plaintiff with the intent that Plaintiff believe and rely upon such statements in connection with and arising out of Defendant's handling and [sic] expense statements concerning Plaintiff's commodities entrusted to Defendant under the consignment contracts.
>
> Defendant has engaged in a pattern of unfair conduct in connection with its handling of Plaintiff's commodities, its accountings, and its payment practices. Defendant engaged in undisclosed and unauthorized self-dealing in connection with the apples received on consignment from Plaintiff.[10]

(Doc. Nos. 46-2 ¶¶ 28-30.)

---

[9] Following the filing of the "Notice of Motion to Amend and Supplement Complaint" (Doc. No. 46) and the Response (Doc. No. 50), the Court held a conference call with counsel on July 18, 2019. The Court asked Plaintiff's counsel the basis for the allegations of FDUTPA violations. (Doc. No. 58 at 10.) Plaintiff's counsel conceded that it was included in the Second Amended Complaint because "[t]here was no statute named at that point, they weren't sure of what [FDUTPA] was, we heard rumors of it, so we [left] [FDUTPA] only… for attorneys' fees." (Doc. No. 58 at 10.)

[10] The self-dealing allegation relates to a $450 inspection fee deducted by Defendant as an expense on the account statement for each shipment. Although this fee is not specifically mentioned in the SAC, Plaintiff's counsel informed the Court in the telephone conference held on July 18, 2019 that he learned through an audit that the company that did the inspection was "Cool-Veg [which] is owned and controlled by Ms. Espinosa." (Doc. No. 41-1 at 2.) Plaintiff referred to this arrangement as "self-dealing," arguing that Defendant's company "[was] clearly conflicted in interest and charging [Plaintiff] for it." (Doc. No. 58 at 11.) However, notably absent from the SAC is an allegation that this fee was excessive or unwarranted. Plaintiff had in its possession the accounting invoices showing this fee before the original Complaint (Doc. No. 1) was filed. No claim was raised that this fee was unwarranted until after the filing of the proposed SAC. This self-dealing allegation is repeated in the new Count IV. If Plaintiff believes that charging the inspection fee is unwarranted because of self-dealing, it may raise this matter at trial as damages that are being sought here.

Finally, and most importantly, in regard to attorney's fees, Count III alleged in paragraph 31 as follows:

> That as the direct result of Defendant's actions and violations of law and its obligations to Plaintiff, Plaintiff has had to retain legal counsel, has incurred attorney's fees and costs, and such fees and costs will continue to increase, all to Plaintiff's damage in an amount as may be determined by the Court.

(Doc. No. 46-2 ¶ 31.)

Next, in Count IV of the SAC Plaintiff added a new count, titled: "Breach of Fiduciary Obligations." (Doc. No. 46-2 at 8-9.) In this Count, Plaintiff alleges as follows:

> … At all times herein, as Plaintiff's consignment sales agent, Defendant was under fiduciary obligation to obtain the best sales price results in the least amount of time with the least amount of expense, and to exercise the utmost good faith and honesty in its dealings with and communications [with] Plaintiff.
>
> Defendant, in breach of its fiduciary obligation to Plaintiff, withheld proper disclosures due [to] Plaintiff, made and/or caused to be made false and/or misleading statements to Plaintiff, including, but not limited to, improper expenses, incurred unnecessary costs calculated to provide a benefit only to Defendant, obtained and asserted statements about Plaintiff's commodities that were either false or hopelessly conflicted and then sought to charge the expenses for same to Plaintiff, and diverted or converted portions of the sales proceeds to itself under the guise of third-party charges.
>
> Defendant violated its fiduciary duty to Plaintiff by engaging in self-dealing by obtaining services from related parties in connection with the handling of Plaintiff's consigned product. The self-dealing was not disclosed and was done without the express authorization of the Plaintiff …

(Id. ¶¶ 33-35.)

### E. Defendant Opposes Plaintiff's Notice of Motion to Amend and Supplement the First Amended Complaint

In response to Plaintiff's "Notice of Motion to Amend and Supplement Plaintiff's Complaint" (Doc. No. 46), Defendant filed on July 11, 2019, "Defendant's Opposition to Motion to Amend." (Doc. No. 50.) In this response, Defendant argues that permitting the filing of SAC at this late date is based on undue delay and would prejudice its case, noting that "prejudice to the

non-moving party is the touchstone for the denial of an amendment." Id.; see also Cornell & Co. v. Occupational Safety & Health Review Comm'n., 575 F.2d 820, 823 (3d Cir. 1978).

Defendant submits that while Plaintiff added language in Count III of the SAC that Defendant engaged in "fraud," Plaintiff has failed to describe the actions that were fraudulent with particularity.[11] (Doc. No. 50 at 2.) Without such particularity, Defendant does not know what conduct is alleged to be fraudulent.

Finally, Defendant asserts that while Plaintiff added the new FDUTPA claim in Count III in order to recover attorney fees, the elements of the statue deal with fraudulent conduct, and those elements would require further fact discovery here. Fla. Stat. Ann. § 501.201-.213 (West); (Doc. No. 50.) And the same is true for the new claim in Count IV, "Breach of Fiduciary Obligations." (Doc. No. 46-2 at 8-9.) Further discovery in this Count would be necessary. For these reasons, Defendant requests that the Motion to Amend and Supplement should be denied.

### III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure afford plaintiffs the opportunity to amend its initial complaint once as a matter of course for the reasons set forth in Rule 15.[12] See Fed. R. Civ. P.

---

[11] Rule 9(b) of the Federal Rules of Civil Procedure states that when alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

[12] The pertinent provisions of Rule 15 provide:

> (a)(1) <u>Amending as a Matter of Course</u>. A party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
>
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

15(a)(1-2), (d). And Rule 15(a)(2) provides that courts have discretion to permit additional amendments "when justice so requires," and that such leave to amend should be "freely given." Id.

In Foman v. Davis, the United States Supreme Court identified several factors that district courts may consider when deciding whether to grant leave to amend. 371 U.S. 178, 182 (1962). These factors include, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Id.

The Third Circuit has recognized that a district court may deny a motion to amend a complaint if the record reflects that " (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman, 371 U.S. 178). Because this list is not exhaustive, district courts may also take into account considerations of judicial economy in making their assessments. Mullin v. Balicki, 875 F.3d 140, 149-50 (3d Cir. 2017).

---

(a)(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

* * *

(d) On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Recently, the Third Circuit emphasized that it is within a district court's discretion to grant or deny leave for additional amendments.[13] Garrett v. Wexford Health, No. 17-3480, 2019 WL 4265187, at *1, *13 (3d Cir. Sept. 10, 2019). The court noted that a district court's discretion to allow or deny leave to amend is important for preventing undue delay and possible prejudice to the defendant. Id. Thus, it is within a district court's sound discretion to grant or deny leave to amend a complaint beyond the first chance as mandated by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15(a),(d). However, this discretion is notably guided by the "freely given" principle of the Rule 15(a)(2), balanced against the likelihood of undue delay, futility, and prejudice to defendants. Fed. R. Civ. P. 15(a)(2).

## IV. ANALYSIS

### A. Plaintiff's Motion to Amend and Supplement its First Amended Complaint Has Been Filed With Undue Delay

The first consideration in determining whether to allow an amendment of the First Amended Complaint is whether the moving party could have amended earlier and avoided undue delay. "[D]elay may become undue when a movant has had previous opportunities to amend a

---

[13] The Third Circuit stated that:

> The decision of whether to permit a plaintiff to file an amended or supplemental complaint under Rule 15 is within a District Court's discretion and is guided by Rule 15's liberal standards. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Garrett filed his Third Amended Complaint and First Amended Complaint with leave of court. Rule 15 permits the District Court discretion to deny additional amendments (after the initial amendment as of right, see Fed. R. Civ. Pro. 15(a)(1)) precisely so that litigants will not try to game the system by improperly delaying a case or otherwise causing prejudice to a defendant's validly raised defenses. As the Jackson court aptly observed, "[d]istrict court discretion is critical to assessing the fairness of amended pleadings." Garrett, No. 17-3480, 2019 WL 4265187, at 89; see also Jackson v. Fong, 870 F.3d 928, 936 (9th Cir. 2017).

complaint." Id. (citing Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)). A district court may deny leave to amend a pleading on the basis of undue delay where the moving party has: (1) failed to utilize previous opportunities to amend and (2) has not offered any explanation for this failure. See Synthes (U.S.A.) v. Globus Med., Inc., No. CIV.A. 04-1235, 2007 WL 906164, at *2 (E.D. Pa. Mar. 21, 2007) (citing Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267 (3d Cir. 2001); Beneficial Equip. Fin. Corp. v. REM Nation PLLC, No. CV 18-00308, 2018 WL 5811471, at *2 (E.D. Pa. Nov. 6, 2018).

Regarding the first factor of failing to utilize previous opportunities to amend, in this case the Motion for Leave to File the SAC was filed on June 28, 2019, close to the dates of the final pre-trial conference and trial. As noted, fact discovery closed on March 4, 2019.[14] Defendant had ample opportunity to seek leave to amend the FAC, between the close of fact discovery on March 4, 2019 and June 28, 2019, a period of nearly three months. However, rather than seeking leave to file the SAC on or about March 4, 2019, Plaintiff engaged in undue delay by filing it on June 28, 2019.

Next, the Court must consider whether Plaintiff has offered any explanation for his failure to seek leave to amend earlier in the case. The primary inquiry when evaluating whether a delay is undue involves an assessment of Plaintiff's reasons for not amending sooner. Adams v. Gould

---

[14] As stated earlier, on January 4, 2019 an Amended Scheduling Order (Doc. No. 36) was issued closing fact discovery on March 4, 2019 and ordering all motions for summary judgment to be filed on or before May 29, 2019, and all pre-trial memoranda to be filed on or before June 26, 2019. (Id.) On May 29, 2019, Defendant filed a partial Motion for Summary Judgment (Doc. No. 40), which was responded to on June 19, 2019. (Doc. No. 41.) A final pre-trial conference was scheduled to be held on July 23, 2019, with trial scheduled for July 30, 2019. (Doc. No. 36.)

Inc., 739 F.2d 858, 868 (3d Cir. 1984). The question of undue delay requires courts to focus on a plaintiff's motive for failing to amend the complaint to assert the claims earlier. Id.

Here, Plaintiff's reasons for adding allegations of increased damages, violations of FDUTPA and fraud, and breach of fiduciary obligations to the SAC are insufficient to justify the amendments. Counts I and II of the proposed SAC essentially rely on the same facts that are alleged in the FAC. Every alleged fact concerns a breach of the 2014 and 2016 consignment agreements that are already alleged in the FAC. The significant difference, however, between Counts I and II in the FAC and the SAC is the increase in the alleged damages, a point conceded by Plaintiff. In Count I of the SAC, Plaintiff is noting a higher amount of damages sought. But in the FAC itself, "damages in the sum of at least $9,156.42 together with such other and further sums as accurate and full accountings for the 11 containers may disclose to be due Plaintiff ..." are sought. (Doc. No. 7 at 5.) Based upon this language in the FAC, Plaintiff would not be precluded from proving at trial an increase in damages learned during discovery.

The same is true with respect to Count II of the SAC, which merely raises the amount of damages. Like Count I, the language in Count II of the FAC states that Plaintiff seeks damages "in the sum of $31,687.75 plus such other and further sums as an accurate accounting on the subject shipments may reveal." Thus, Plaintiff would not be precluded from proving at trial the increase in damages it learned during discovery. (Id. at 6.)

Moreover, with respect to Count III, Plaintiff has not set forth sufficient reasons why the claim under the Florida statute, the FDUPTA, could not have been added earlier to the FAC. As noted above, the alleged violation of the FDUTPA statute was added to Count III only to afford Plaintiff's counsel a remedy for obtaining attorney fees. During a telephone conference with counsel for the parties held on July 18, 2019, the Court asked Plaintiff's counsel to state the reason

why the new claim for a violation of the FDUTPA was included in the SAC. (Id. at 10.) As noted previously, Plaintiff's counsel explained that he did not include this statute in the FAC because, "[t]here was no statute named at that point, they weren't sure of what [FDUTPA] was, we heard rumors of it, so we [left] [FDUTPA] only…for attorneys' fees [sic]." (Doc. No. 58 at 10.) This explanation is insufficient to support adding this statute with its new elements of fraud at this late date in the litigation. Plaintiff's counsel was aware of the statute much earlier in the case and chose not to investigate its elements and remedies when he had ample opportunity to do so.

In addition, there are other reasons why the change in the language of Count III adding the Florida Statue should not be allowed at this late stage in the litigation. Two more reasons are discussed below.

### B. Plaintiff's Claims in Count III and Count IV of the Second Amended Complaint Would Be Futile

Another factor the Court should consider is whether the new allegations set forth in the SAC would be futile. "Futility of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463 (D.N.J. 1990). "If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend. If a proposed amendment is not clearly futile, then denial of leave to amend is improper." Wright, Miller & Kane, Federal Practice & Procedure § 1487 at 637–642 (2d ed. 1990) [footnotes omitted]; see also Harrison Beverage Co.,133 F.R.D. at 468–69 (D.N.J. 1990.)

Here, starting with Count III of the SAC, it alleges that Defendant engaged in fraudulent activity as follows:

> …That Defendant made false and/or misleading statements to Plaintiff with the intent that Plaintiff believe and rely upon such statements in connection with and arising out of

>Defendant's handling and expense statements concerning Plaintiff's commodities entrusted to Defendant under the consignment contracts.
>
>Defendant has engaged in a pattern of unfair conduct in connection with its handling of Plaintiff's commodities, its accountings, and its payment practices. Defendant engaged in undisclosed and unauthorized self-dealing in connection with the apples received on consignment from Plaintiff …

(Doc. No. 46-2 ¶¶ 29-30.)

In Count IV of the SAC titled " Breach of Fiduciary Obligations," Plaintiff alleges the following:

>… Defendant, in breach of its fiduciary obligation to Plaintiff, withheld proper disclosures due Plaintiff, made and/or caused to be made false and/or misleading statements to Plaintiff, including, but not limited to, improper expenses, incurred unnecessary costs calculated to provide a benefit only to Defendant, obtained and asserted statements about Plaintiff's commodities that were either false or hopelessly conflicted and then sought to charge the expenses for same to Plaintiff, and diverted or converted portions of the sales proceeds to itself under the guise of third-party charges.
>
>Defendant violated its fiduciary duty to Plaintiff by engaging in self-dealing by obtaining services from related parties in connection with the handling of Plaintiff's consigned product. The self-dealing was not disclosed and was done without the express authorization of the Plaintiff.
>
>As the result of Defendant's conduct in breach of its fiduciary obligations to Plaintiff, Defendant has violated it duties owed to Plaintiff and has waived its rights to be compensated for its handling of Plaintiff's commodities and must therefore forfeit the commissions which it withheld from the proceeds of the sale of Plaintiff's apples …

(Doc. No. 46-2 ¶ ¶ 34-36.)

The allegations in Count III "Violation of Florida Deceptive Trade Practices Act" (FDUTPA) and Count IV "Breach of Fiduciary Obligations" are barred by the gist of the action doctrine and, for this reason, their inclusion in the SAC would be futile. The Pennsylvania Supreme Court has held that the "gist of the action" doctrine precludes a tort claim "based on [a] party's actions undertaken in the course of carrying out a contractual agreement ... when the gist or gravamen of the cause of action.... although sounding in tort, is, in actuality, a claim against the

party for breach of its contractual obligations." See DePuy Synthes Sales, Inc. v. Globus Med., Inc., 259 F. Supp. 3d 225 (E.D. Pa. 2017);[15] Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (2014). Courts have held that a breach of fiduciary duty claim is barred by gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations. DePuy Synthes Sales, Inc., 259 F. Supp. 3d at 234; Alpart v. Gen. Land Partners, Inc., 574 F.Supp.2d 491, 499 (E.D. Pa. 2008).

Both the "fraud" claim under the Florida statute and the "breach of fiduciary obligations" claim are grounded in the contractual terms set forth in the consignment agreements issued pursuant to PACA and its regulations. Plaintiff's contentions in these two Counts that Defendant engaged in fraudulent conduct and failed to "obtain the best sales price… with the least amount of expense" all arise from the contractual obligation of the parties in the 2014 and 2016 consignment agreements. (Id.); see also (Doc. No. 7.) Plaintiff's argument that Defendant breached its "fiduciary obligation" by making "misleading statements to Plaintiff, including … improper expenses, incurred unnecessary costs calculated to provide a benefit made false and/or misleading statements to Plaintiff…" essentially repeats Plaintiff's allegation that Defendant breached its obligations under the consignment agreements. A close analysis of Counts III and IV reveal that they are essentially alleging violations of these contracts. This is the gist of the action.

Because Plaintiff's fraud and breach of fiduciary duty claims set forth in Counts III and IV are grounded in the contractual obligations under the consignment agreements, the gist of the

---

[15] In DePuy Synthes Sales, Inc. v. Globus Med., Inc., a medical device manufacturer brought an action alleging that its former sales consultants breached restrictive covenants in their employment agreement and breached their fiduciary duty. 259 F. Supp. 3d 225, 236 (E.D. Pa. 2017). The Court held that the gist of the action doctrine barred the manufacturer's breach of fiduciary duty claims because the actions that formed the basis for plaintiff's breach of fiduciary claim were "identical acts underlying the breach of contract action." Id.

action doctrine would preclude Plaintiff from bringing the new claims in Counts III and IV of the SAC.

### C. Granting Leave to Amend the Second Amended Complaint at this Late Date Will be Prejudicial to Defendant

The third factor the Court considers is whether granting leave to amend would be prejudicial to Defendant. The Third Circuit has repeatedly recognized that, "prejudice to the non-moving party is the touchstone for the denial of an amendment." Mullin, 875 F.3d at 150 (internal quotation marks and citation omitted); see also Cureton, 252 F.3d at 273 (citing Lorenz, 1 F.3d at 1414) ("[s]ubstantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend"). A main consideration in assessing prejudice is whether allowing the amendment would increase the cost to Defendant and/or require additional discovery. Cureton, 252 F.3d at 273.

Here, Defendant would be prejudiced if Plaintiff was granted leave to add claims of "fraud" in violation of the Florida statute and breach of fiduciary obligations because these new causes of action would require reopening of the record for additional discovery. This would significantly increase Defendant's financial costs in a case that started on June 9, 2017. As noted earlier, Plaintiff is seeking damages in the amount of $34,055 on Count I and $35,738 on Count II, totaling approximately $70,000. Given this approximate total, to foist upon Defendant at this time the need to pay more legal fees for further discovery would be disproportional to the fees and costs incurred to date combined with future fees and costs when viewed against the overall value of this case. Because of the financial burden on Defendant and the need for additional discovery, the Court is convinced that granting leave to amend would result in real prejudice to Defendant and inordinately delay the disposition of this case. As appropriately stated by Defendant in his

Opposition to the Motion to Amend: "this is a small case that cries out for finality." (Doc. No. 50 at 5.) To extend the litigation for the reasons addressed in the SAC would be unjust.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend and Supplement Plaintiff's Complaint will be denied. An appropriate Order follows.